IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01086-PAB-MJW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

6941 MORRISON DRIVE, DENVER, COLORADO,

      Defendant.

---

## ORDER

---

      This matter is before the Court on United States' Motion for Summary Judgment [Docket No. 50] filed by plaintiff United States of America ("United States").  This is a forfeiture case wherein the United States seeks to forfeit a residence used to grow marijuana for purposes of distributing it.  The Court's jurisdiction is based on 28 U.S.C. § 1331.

## I.  BACKGROUND

      The following facts are undisputed unless otherwise indicated.  At all relevant times, claimant Richard Maes was living at defendant 6941 Morrison Drive, Denver, Colorado.  Docket No. 50 at 3, ¶ 2; Docket No. 63 at 2, ¶ 2.  Mr. Maes holds the sole title in the defendant property.  Docket No. 50 at 6, ¶ 18; Docket No. 63 at 5, ¶ 18.

      Mr. Maes testified at his deposition that he received a medical marijuana license in 2010 and began growing marijuana plants at that time, both for himself and for other patients who lacked the space to do so on their own.  Docket No. 50-7 at 3.  He testified

that he "had an understanding that he was able to be a caregiver to cultivate medical marijuana for his and others' medical needs [so he] didn't think it was illegal to grow marijuana in his own home."  Docket No. 50-7 at 3-4.

On February 28, 2012, the North Metro Drug Task Force received an anonymous tip that Mr. Maes was operating a marijuana grow operation at defendant property.  Docket No. 50 at 3, ¶ 2.  A detective performed a follow-up investigation.  *Id*. at 4, ¶ 5.  On March 7, 2012, a Colorado State search warrant was executed at defendant property.  *Id*. at 4, ¶ 6; Docket No. 63 at 3, ¶ 6.  During the search, officers found dried marijuana[1] and an AR-15 rifle.  Docket No. 50 at 4, ¶ 7; Docket No. 63 at 3, ¶ 7.  According to the Adams County Sheriff's Office Property-Evidence Report, the dried marijuana was recovered from an upstairs bathroom closet, the "back office," the kitchen, the guest bedroom, and the hallway closet.  Docket No. 50-5.  In the basement, officers discovered a marijuana grow operation.  Docket No. 50 at 4, ¶ 8; Docket No. 63 at 3, ¶ 8.  The parties dispute the number of marijuana plants found in the basement. Docket No. 50 at 4, ¶¶ 9-10; Docket No. 63 at 3, ¶ 9.  The United States asserts that officers counted 362 plants.  Docket No. 50 at 4, ¶ 9.  Mr. Maes states that 300 of these were cuttings without visible roots and thus do not qualify as plants under federal law. Docket No. 63 at 3-4, ¶ 9; *see also* Docket No. 50-7 at 6, ¶ 2 (Maes' response to discovery requests indicating that he had made the cuttings on March 6, 2012, the day before the search warrant was executed.).

---

[1]The United States asserts that seven pounds were recovered; in response to the United States' request for admissions, Mr. Maes admitted to just over one pound. *See* Docket No. 50-5; Docket No. 50-7 at 7.

At the time of the search, Mr. Maes was using the laundry room in his basement to clone marijuana plants.  Docket No. 50 at 5, ¶ 11; Docket No. 63 at 4, ¶ 11.  Between August 2010 and March 7, 2012, Mr. Maes completed five marijuana growing cycles in the basement of defendant property, each of which takes approximately three and a half months and yields approximately one pound of marijuana for every fifteen plants.  Docket No. 50 at 5, ¶¶ 12-13; Docket No. 63 at 4, ¶¶ 12-13.

In addition, the power for the grow operation came from an electrical connection that bypassed the power meter.  Docket No. 50 at 4, ¶ 3; Docket No. 63 at 3, ¶ 3.  Mr. Maes disputes that he intentionally bypassed the power meter.  *Id*.  He testified at his deposition that he configured the wiring for the lights in his basement in a manner he believed matched the wiring for the electrical panel after a generator he was using had failed.  Docket No. 63-2 at 3 (Maes dep., at 48, ll.1-25).

On March 12, 2012, the District Attorney's Office for the 17th Judicial District[2] charged Mr. Maes with violations of Colo. Rev. Stat. § 18-18-406(7.5)(c) (cultivation of marijuana involving thirty or more plants); Colo. Rev. Stat. § 18-18-407(1)(b) (controlled substance special offender based on his possession of the rifle); and Colo. Rev. Stat. § 18-18-406(6)(b)(I), (III)(A) (marijuana possession with intent to distribute).  Docket No. 50 at 5, ¶ 15; Docket No. 63 at 4, ¶ 15.  On March 8, 2013, Mr. Maes pled guilty in state court to a class 5 felony of possessing less than five pounds of marijuana with intent to distribute.  Docket No. 50 at 5, ¶ 16; Docket No. 50-11 at 2; Docket No. 63 at 4, ¶ 16; *see* Colo. Rev. Stat. § 18-18-406 (prior to 2013 amendments).  Mr. Maes was

---

[2]Although it has a postal address in the City and County of Denver, defendant property is located in Adams County, Colorado.

sentenced to two years probation and costs and fines in the amount of $3,271.50. Docket No. 50-11 at 2.

From January 2008 through September 2012, Mr. Maes was not employed; he stated that he was supporting himself during this time through help from his girlfriend and his family, a line of credit, gambling winnings, and odd jobs related to recycling scrap metal. Docket No. 50 at 5, ¶ 17; Docket No. 63 at 4, ¶ 17. The estimated market value of the defendant property is $142,000. Docket No. 50 at 6, ¶ 19; Docket No. 63 at 5, ¶ 19.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

### III.  ANALYSIS

#### A.  Forfeitability

The United States argues that it is entitled to summary judgment because Mr.
Maes does not dispute growing over fifty marijuana plants in the basement of defendant
property, rendering the property subject to forfeiture under 21 U.S.C. § 881(a)(7).
Docket No. 50 at 8-10.  Mr. Maes does not dispute that the house is subject to forfeiture
under federal statutory law.  *See* Docket No. 63 at 11-13.

"All real property" is subject to forfeiture by the United States if it is "used . . . in
any manner or part, to commit, or to facilitate the commission of, a violation" of the
federal drug laws punishable by more than one year imprisonment.  21 U.S.C.
§ 881(a)(7).  Manufacturing, distributing, dispensing, or possessing with the intent to
manufacture or distribute fifty or more marijuana plants, regardless of their weight, is
prohibited and is punishable by a maximum penalty of five years incarceration and a
fine of $250,000.  21 U.S.C.  § 841(b)(1)(D).

Mr. Maes does not dispute that he was cultivating over fifty marijuana plants in
the basement of defendant property with the intent to distribute.  Docket No. 50 at 4,
¶ 10; Docket No. 63 at 4, ¶ 10.  Thus, the property is subject to forfeiture under the
plain language of 21 U.S.C. §§ 841(b)(1)(D) and 881(a)(7).

#### B.  Proportionality

Mr. Maes argues that the Court should deny summary judgment because there
is a material dispute of fact regarding whether the forfeiture of his home constitutes an
"excessive fine" within the meaning of the Eighth Amendment.  Docket No. 63 at 11-13.

The United States responds that the factors relevant to proportionality do not support a finding of excessiveness.  Docket No. 64.

The Eighth Amendment prohibits the imposition of "excessive fines."  U.S. Const. Amend. VIII.  The term "fine" is "understood to mean a payment to a sovereign as punishment for some offense."  *United States v. Bajakajian*, 524 U.S. 321, 327 (1998). Forfeitures that are not solely remedial in character are considered punitive fines for the purpose of the Eighth Amendment.  *Austin v. United States*, 509 U.S. 602, 621 (1993) (a civil fine "that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment") (emphasis in original).  Punitive forfeitures must adhere to the principle of proportionality, that is, the "amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."  *Bajakajian*, 524 U.S. at 334.  "A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."  *United States v. Nacchio*, 573 F.3d 1062, 1090 n.28 (10th Cir. 2009) (internal citations and alterations omitted).

The excessiveness of a forfeiture is a question of law to be resolved by the Court.  *Bajakajian*, 524 U.S. at 337 n.10.  The government "must make an initial showing that the connection between the property and the offense is more than a fortuitous or incidental one."  *United States v. Wagoner County Real Estate*, 278 F.3d 1091, 1101 n.8 (10th Cir. 2002) (internal alterations omitted).  Upon such a showing, the burden shifts to the claimant "to show that the forfeiture is grossly disproportionate in light of the totality of the circumstances."  *Id.* (internal citations omitted).

"There is a strong presumption of constitutionality where the value of a forfeiture falls within the fine range prescribed by Congress or the [Sentencing] Guidelines." *United States v. Malewicka*, 664 F.3d 1099, 1106 (7th Cir. 2011).  In addition to the statutory penalty, the *Bajakajian* Court considered the extent of the criminal activity, related illegal activities, and the harm caused to other parties.  524 U.S. at 337-39. In the context of civil in rem forfeitures, the Tenth Circuit takes into account "the general use of the forfeited property, any previously imposed federal sanctions, the benefit to the claimant, the value of seized contraband, and the property's connection with the offense."  *Wagoner County Real Estate*, 278 F.3d at 1101.

The Court finds that the United States has satisfied its burden of showing that the relationship between the property and the illegal conduct was more than fortuitous or incidental.  Mr. Maes intentionally grew marijuana in his basement from 2010 to 2012 for purposes of distributing it, cloned plants in the laundry room, and bypassed the electrical meter to avoid detection of the grow operation.[3]  He also stored marijuana in the house.  These facts are sufficient to meet the threshold instrumentality test.  *See United States v. 829 Calle de Madero, Chaparral, Otero County, N.M.*, 100 F.3d 734, 739 (10th Cir. 1996) (using personal residence to conduct sale of three kilograms of cocaine sufficient to establish requisite nexus); *United States v. One Parcel of Real Property with Buildings, Appurtenances, and Improvements, Known as 154 Manley*

---

[3]Although claimant testified at his deposition that he did not intentionally bypass the electrical meter, the Court finds that no reasonable jury would believe such claim. Rather, a reasonable jury would find that claimant intentionally bypassed the power meter to avoid detection of his grow operation by virtue of him using inordinate amounts of electricity for the size of his home and as compared to his previous use pattern.

*Road, Located in Town of Burriville, R.I.*, 4 F. Supp. 2d 65, 69-70 (D.R.I. 1998) (selling cocaine on defendant property on several occasions and storing cocaine and proceeds from selling cocaine on defendant property sufficient to establish "substantial connection" between property and the charged offense).  Thus, Mr. Maes bears the burden of showing that the forfeiture is grossly disproportional to the offense.

The *Bajakajian* factors weigh against Mr. Maes because his grow operation was sophisticated, encompassed five growing cycles and over sixty plants, and involved over two hundred cuttings.  Furthermore, he possessed a firearm in proximity to the grow operation and concealed his use of electricity.  With respect to the harm caused, there is no evidence Mr. Maes provided drugs to minors, participated in an organized crime ring or gang, or cultivated marijuana so as to harm the natural environment.  However, possessing a high-powered rifle next to an area where marijuana was stored created a risk that he would use the rifle to defend his illegal grow operation.  Although Mr. Maes states that he was a "medical marijuana patient and caregiver for numerous patients," Docket No. 63 at 6, ¶ 3, he offers no evidence other than his own testimony that he had a valid license to grow medical marijuana or that he was providing it to other patients.  Moreover, he pled guilty to possessing marijuana with intent to distribute in violation of state law.  *See* Docket No. 50-11 at 2; *see also* Docket No. 63-1 at 7, ¶ 4 ("Claimant's mother talked to Detective Padilla on the day of the raid and he told her that they had found [claimant's medical marijuana] license.  Detective Padilla is the one who said it was illegal because the license was expired.").  Thus, Mr. Maes' purported belief that his grow operation was legal under state law is not sufficient to tip the harm factor in his favor.

8

The Court turns to the factors set forth in *Wagoner*.  *See* 278 F.3d at 1101 ("the general use of the forfeited property, any previously imposed federal sanctions, the benefit to the claimant, the value of seized contraband, and the property's connection with the offense").  First, the general use of the forfeited property favors Mr. Maes, as the property is his personal residence.  Docket No. 63 at 12.  Next, it is undisputed that the monetary value of the house is $142,000.[4]  This amount is less than the $250,000 fine that could be imposed under 21 U.S.C. § 841(b)(1)(D) and thus the forfeiture is presumptively constitutional.  *See Malewicka*, 664 F.3d at 1106.  The next factor, the previous imposition of federal sanctions, tips against Mr. Maes as there is no evidence that he has incurred any other federal penalties related to the grow operation.

There is no direct evidence in the record regarding the benefit that Mr. Maes derived from his grow operation.  The United States asserts that "it belies logic that [Mr. Maes] was not receiving some benefit from his illegal growing operation," but this assertion does not facilitate a numerical approximation of that benefit.  Docket No. 64 at 8.  In response to a request for admission regarding his sources of income between January 2008 and September 2012, Mr. Maes did not mention the grow operation, implying that this endeavor did not yield him a material benefit.  *See* Docket No. 50-7 at 2-3, ¶ 3.  However, given the considerable time and expense that he evidently invested in the operation, the presence of the rifle, and the lack of evidence that Mr. Maes was provisioning legitimate patients, this factor is, at best, neutral.  Finally, defendant property was closely connected to the offense because it was used to cultivate, clone,

---

[4]In its reply, the United States offers evidence that Mr. Maes owes $48,364.93 on a home equity line of credit, leaving him $93,635.07 in equity.  Docket No. 64-1.

and store marijuana and because Mr. Maes diverted electricity to the property in order to conceal his growing operation.

Going beyond this set of factors, Mr. Maes argues that, "due to the quasi-legalization of medical marijuana and the recent outright legalization of recreational marijuana under Colorado law, the assertion that the cultivation of marijuana is so severe of a criminal offense that Claimant should be divested of his lifelong home is absurd."  Docket No. 63 at 12.  He argues that many people grow and possess marijuana, especially in states, such as Colorado, where it has been decriminalized, and that possessing a firearm or bypassing an electrical meter are not offenses that, on their own, support forfeiture of real property.  Docket No. 63 at 13.

The Colorado legislative scheme upon which Mr. Maes relies operates as follows: on December 28, 2000, Amendment 20 to the Colorado Constitution went into effect, establishing the medical use of marijuana as an affirmative defense to a violation of the State's criminal drug laws.  Colo. Const. Art 18, § 14(2)(a).  The defense is only available to a "patient or primary care-giver in lawful possession of a registry identification card to engage or assist in the medical use of marijuana."  *Id*. at § 14(2)(b).  To maintain a valid registry card, a patient must resubmit an application annually.  *Id*. at § 14(3)(f).  A "primary care-giver" is defined as a person over eighteen years who "has significant responsibility for managing the well-being of a patient who has a debilitating medical condition."  *Id*. at § 14(1)(f).  A patient may possess no more than "two ounces of a usable form of marijuana" and no more than "six marijuana plants, with three or fewer being mature, flowering plants."  *Id*. at § 14(4)(a).  "For quantities of marijuana in excess of these amounts, a patient or his or her primary care-

10

giver may raise as an affirmative defense to charges of violation of state law that such greater amounts were medically necessary." *Id*. at § 14(4)(b).

On December 6, 2012, ten months after the search in this matter, the Colorado Attorney General certified the passage of Amendment 64, codified as Article 18, Section 16 of the Colorado Constitution.  This section provides that:

> "In the interest of the efficient use of law enforcement resources, enhancing revenue for public purposes, and individual freedom, the people of the state of Colorado find and declare that the use of marijuana should be legal for persons twenty-one years of age or older and taxed in a manner similar to alcohol."

Colo. Const. Art. XVIII, § 16(1)(a), (9).  Section 16 legalizes the possession of one ounce or less of marijuana and the cultivation no more than six marijuana plants per person, no more than three of which are mature flowering plants, for persons over the age of twenty-one.  *Id*. at § 16(3)(a)-(b).  It also legalizes cultivating and harvesting marijuana by individuals who have "obtained a current, valid license to operate a marijuana cultivation facility."[5]  *Id*. at § 16(4)(c).

Mr. Maes argues that this section "applies retroactively to this case, as it goes to the proportionality of the punishment of seizing a man's home for an action that 55% of Coloradoans believe should not be a crime."  Docket No. 63 at 9-10.  It appears that Mr. Maes uses the term "retroactively" to mean that the proportionality of a fine should be determined in relationship to the legal and social landscape as of the time the Excessive Fines challenge is resolved as opposed to at the time either the offense giving rise to the forfeiture was committed or when the forfeiture case was filed.

---

[5]"No retail marijuana license shall be effective until January 1, 2014."  Colo. Rev. Stat. § 12-43.4-104(1)(a)(VI)(A).

"A claim that punishment is excessive is judged . . . by [the standards] that currently prevail." *Atkins v. Virginia*, 536 U.S. 304, 311 (2002) (relying in part on state laws enacted after defendant's sentencing in concluding that the Eighth Amendment prohibits imposing capital punishment on mentally retarded defendants); *see also Kennedy v. Louisiana*, 554 U.S. 407, 422-26 (2008) (taking into account state laws passed since commission of crime in evaluating proportionality of defendant's sentence); *United States v. One Parcel of Property Located at 5 Reynolds Lane, Waterford, Connecticut*, 2013 WL 3853404, at *12-13 (D. Conn. July 25, 2013) (considering legal developments since commission of crime in concluding that forfeiture of personal residence used to grow and store marijuana was not excessive under the Eighth Amendment).

In this case, however, claimant is unable to demonstrate how the legal changes reflected in Amendments 20 and 64 apply to the facts of his claim. Regarding Amendment 20, it provides an affirmative defense to a patient or primary care-giver charged with a violation of Colorado criminal law. Claimant obviously did not qualify for any such affirmative defense given that he was convicted of Marijuana Possession with Intent to Distribute, a felony offense. Moreover, although claimant states that he had a medical marijuana license, *see* Docket No. 63 at 6, Docket No. 63-1 at 3, 7, claimant provides no proof that his license was current as of the date of the seizure and no proof that he had legitimate patients to whom he supplied marijuana.

Regarding Amendment 64, claimant possessed more marijuana plants than allowed for personal use and obviously did not have a license to commercially grow

marijuana.  *See* Colo. Const. Art. XVIII, § 16(3), (4); Colo. Rev. Stat. § 12-43.4-104(1)(a)(VI); Colo. Rev. Stat. § 12-43.4-901(2)(a).  Thus, Amendment 64 does not suggest that claimant's activities were permissible or would be sanctioned according to our "evolving standards of decency."  *See Atkins*, 536 U.S. at 311-12.

The fact of the matter is that claimant used his own home to conduct a marijuana grow operation that was illegal under both state and federal law.  He used the basement to grow the plants, and he used the kitchen, the hallway closet, the back office, the guest bedroom, and the upstairs bathroom closet to store dried marijuana.  Docket No. 50-5.  Thus, he used every floor of the house to possess marijuana with the intent to distribute it.  He bypassed the electricity meter box to avoid detection of his grow operation (which does not suggest that he believed that what he was doing was legal) and kept an AR-15 rifle in his bedroom.  *Id.* at 1.  None of these facts suggest that forfeiture of the entire house is grossly disproportionate under the totality of the circumstances.  While the home undoubtedly has sentimental value, claimant knowingly put his ownership at risk by using it for illegal activities.  *See United States v. Real Property Known and Numbered as 415 East Mitchell Avenue, Cincinnati, Ohio*, 149 F.3d 472 (6th Cir. 1998) (forfeiture of $220,000 house not excessive where claimant used house to store over two hundred grams of marijuana, seeds, three large incubators, and nineteen plants); *United States v. One Parcel of Real Estate Located at 25 Sandra Court, Sandwich, Illinois*, 135 F.3d 462 (7th Cir. 1998) (forfeiture of house in which claimants had $66,000 in equity not disproportionate to crime of cultivating eighty-five marijuana plants and storing one hundred grams of marijuana in the house);

13

*United States v. Premises Known as 6040 Wentworth Avenue South, Minneapolis, Hennepin County, Minnesota*, 123 F.3d 685, 689 (8th Cir. 1997) (forfeiture of $60,000 home was constitutional where claimants had planted approximately two hundred marijuana cuttings and were storing nearly seven pounds of marijuana, as well as a key to safety deposit box containing $40,000).

In sum, given that the forfeiture is presumptively constitutional, *see Malewicka*, 664 F.3d at 1106, Mr. Maes has not carried his burden of showing that the fine is excessive under the Eighth Amendment.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that United States' Motion for Summary Judgment [Docket No. 50] is GRANTED.  It is further

**ORDERED** that all right, title, and interest in defendant property 6941 Morrison Drive, Denver, Colorado, is forfeited to plaintiff the United States of America, subject to the terms set forth in settlement agreements between plaintiff and third parties.  It is further

**ORDERED** that the trial preparation conference set for January 13, 2013 and the

trial set for January 28, 2013 are VACATED.  It is further

**ORDERED** that this case is CLOSED.


DATED December 19, 2013.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge